**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JAMES SCHELLHASE,**<br><br>Plaintiff,<br><br>v.<br><br>**DADS AGAINST PREDATORS an unincorporated association; D.A.P. CARES FOUNDATION; H-E-B, LP; SWEEPSTEAKS LIMITED d/b/a STAKE.US; JAY CAMERON CARNICOM, individually and d/b/a Dads Against Predators; JOSHUA ALVIN MUNDY, individually and d/b/a Dads Against Predators**; **KORI ALLEN CAMPBELL; NATHANAEL JEFFREY JOHNSON; and AUSTIN TYLER WILEMAN,**<br><br>Defendants. | ) | CASE NO. 1:26-cv-02728<br><br>**<u>COMPLAINT</u>**<br><br>**<u>(Jury Demanded)</u>** |

Plaintiff James Schellhase ("Plaintiff" or "Schellhase") files this Complaint against Defendant Dads Against Predators ("DAP"), Defendant D.A.P Cares Foundation ("DAP Cares") Defendant H-E-B, LP ("H-E-B"), Defendant Sweepsteaks Limited d/b/a Stake.us ("Stake"), Defendant Jay Carnicom ("Carnicom"), Defendant Joshua Mundy ("Mundy"), Defendant Kori Campbell ("Campbell"), Defendant Nathanael Johnson ("Johnson"), and Defendant Austin Wileman ("Wileman"), collectively "Defendants," and would show the following:

## **<u>PARTIES</u>**

1. Plaintiff James Schellhase is an individual and a resident of Austin, Texas.

2. Defendant Dads Against Predators is an unincorporated association co-founded, co-owned, and co-operated by Defendants Carnicom and Mundy and is named in this Complaint as a

party under Federal Rule of Civil Procedure 17 with reference to Texas Rule of Civil Procedure 28.

3. Defendant D.A.P. Cares Foundation is a 501(c)(3) nonprofit organization, registered under the laws of Ohio, with its registered agent located at 1426 Napoleon Street, Fremont, Ohio 43420.

4. Defendant H-E-B, LP is limited partnership registered under the laws of Texas, with its principal place of business located at 646 S. Flores Street, San Antonio, Texas 78204.

5. Defendant Stake.us is the d/b/a registered trade name for Sweepsteaks Limited with its principal place of business located at 13101 Preston Road, Suite 110-5027, Dallas, Texas 75240.

6. Defendant Jay Cameron Carnicom is an individual and a resident of Middleburg, Florida.

7. Defendant Joshua Alvin Mundy is an individual and a resident of Fremont, Ohio.

8. Defendant Kori Allen Campbell is an individual and a resident of Fremont, Ohio.

9. Defendant Nathanael Jeffrey Johnson is an individual and a resident of Littleton, Colorado.

10. Defendant Austin Tyler Wileman is an individual and a resident of Starkville, Mississippi.

11. Additionally, Plaintiff invokes the doctrine of respondeat superior and vicarious liability. At all material times, Defendants Carnicom, Campbell, Johnson, and Wileman (collectively referred to as "Individual DAP Defendants") acted as agents of, on behalf of, and in the scope of their agency relationship with Defendants DAP, DAP Cares, Carnicom, and Mundy.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because this action arises, in part, under 18 U.S.C. §§ 1964(c) and (d).

13. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

14. This Court has personal jurisdiction over Defendants because Defendants have, at all relevant times, systematically and continually conducted, and continue to conduct business in Texas or have committed crimes, tortious conduct, or other acts against Plaintiff and others in Texas, and this lawsuit arises out of those contacts with Texas.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS

### *Employment with UnitedLex*

16. Plaintiff is a highly experienced executive and has successfully led several companies through transformation and exit strategies. He is a six-time Chief Executive Officer (CEO).

17. As of the time most of the incidents relevant to this Complaint occurred, Plaintiff was employed as the CEO of UnitedLex, a large legal services company that provides technological services and traditional legal support to large corporate clients.

18. Plaintiff was the public-facing leader of UnitedLex and routinely gave public interviews or was the subject of public articles.

19. Plaintiff had an Employment Agreement with United Lex, which dictated much of the terms of Plaintiff's employment. Plaintiff earned a yearly salary of $450,000, was entitled to

an annual bonus of up to $450,000 and was granted 12,450 shares of company equity. Plaintiff was a successful and high-performing employee and officer of UnitedLex.

20. Before the incidents relevant to this Complaint, Plaintiff was a well-respected executive with strong connections within his industry. He was also an experienced and well-connected venture capitalist and auditor.

***"Dads Against Predators"***

21. Defendants Mundy and Carnicom are co-founders and co-owners of Defendant DAP, an organization that was founded in 2020.

22. Defendant DAP is an unincorporated association that films videos which purport to expose potential child predators, including by violently assaulting unsuspecting victims to create viral online content. Defendant DAP operates a "watch" page on its website, where people can pay money to watch DAP's full videos. Defendant DAP also operates several social media accounts where it shares clips of their full videos to generate online attention and revenue.

23. In reality, to further its schemes of extorting and defrauding unsuspecting victims, members of Defendant DAP create fake dating profiles falsely claiming to be adults they are not, chat with potential unsuspecting victims through online messages or phone calls, and then change their stories by falsely claiming to be minors in an effort to extort, defraud, and otherwise defame and invade the privacy of the victims. After falsely claiming to be minors, the DAP users discuss meeting with the potential victim at a public place. Once agreeing to meet, Defendant DAP members aggressively confront the victim, film the encounter, yell and announce that the victim is a pedophile, and viciously tackle, smack, punch, or otherwise assault the victim on camera, all while filming the encounter.

24. Once Defendant DAP has a video of the outrageous confrontation and assault, which, according to Defendant DAP's plan, depicts the victim as a person attempting to meet a minor, Defendant DAP extorts the victim by threatening to expose the victim as a pedophile (to their family, employer, etc.) unless the victim makes an extortion payment or provides some other value to Defendant DAP.

25. If the victim does not pay the extortion demand, Defendant DAP then posts the videos on its website and on various social media accounts to generate clicks, website traffic, sales, membership fees, notoriety, and other things of value.

26. Upon information and belief, Defendants Carnicom, Mundy, DAP, and DAP Cares manage the funding, resources, members, and planning of the assault and extortion schemes. In concert with others, they oversee, direct, and lead the operations, videos, and assault and extortion schemes.

27. Defendant DAP has a "code of conduct" and "rules" by which it purports to operate.

28. Defendant DAP claims that "Dads Against Predators exists to expose online predators, educate families, support victims, and encourage meaningful conversations about online child exploitation."

29. Defendant DAP's ultimate purpose is to film the assault of victims in unique and outrageous ways and to make money from those videos either by extorting the victim, posting the videos online, or both. Defendant DAP intentionally generates hysterias, encourages vigilantism, and ignores law enforcement procedures and due process.

30. Upon information and belief, victims seldom press charges against Defendant DAP members because they want to avoid drawing unwanted attention to themselves.

31. Defendant DAP claims that Defendant DAP Cares is a registered 501(c)(3) organization that is "dedicated to supporting victims of online exploitation, strengthening organizations that protect children, and investing in people making a difference" and, according to Defendant DAP's website, it operates for the purpose of "providing direct assistance to victims in crisis, supporting organizations that serve survivors, and investing in programs that help protect children across the country."

32. Upon information and belief, Defendant DAP Cares controls many of the financial transactions of Defendant DAP. Moreover, upon information and belief, Defendant DAP collects membership dues and other donations to fund Defendant DAP Cares.

33. Defendant DAP conducts operations and films videos throughout the United States, including Texas. Upon information and belief, Defendant DAP manages much of its operations from Ohio.

***DAP targets Schellhase***

34. On September 28, 2024, while Plaintiff was employed with UnitedLex, Defendant DAP—through Defendants Carnicom, Campbell, Johnson, and Wileman (collectively, "Individual DAP Defendants")—targeted, ambushed, and viciously attacked Plaintiff.

35. Before that attack, on September 27, 2024, unbeknownst to Plaintiff, the Individual DAP Defendants targeted Plaintiff by posing as adult men on social media platforms who claimed to be romantically interested in Plaintiff.

36. One profile, "SAguy," claimed to be a man in his mid-20s. Another profile, "Clay boy" claimed to be a 19-year-old man. Plaintiff chatted with the men behind the profiles.

37. Both "Clay boy" and "SAguy" professed to live in the same area as Plaintiff, and these conversations included discussions of potentially meeting.

38. However, after enticing Plaintiff into the online conversations, each profile user subsequently claimed to actually be a minor. After that, Plaintiff immediately declined any sexual contact and attempted to end the conversations.

39. The following day, however, both profiles continued to message Plaintiff and continued to request sexual activity. Plaintiff refused again.

40. Due to the unusual persistence, however, Plaintiff believed the profiles may have been targeting him to scam or prank him. Plaintiff tested the legitimacy of one of the profiles by asking the person about his local knowledge. After the person said he went to a high school which Plaintiff knew did not exist, and lacked local knowledge of key roads, Plaintiff concluded the user of the profile was scamming or pranking him, and not, in fact, a minor.

41. The profile user then asked to meet Plaintiff in person at H-E-B, a public grocery store. Plaintiff was already planning to visit H-E-B in preparation for an international business trip the following morning. Plaintiff agreed to meet the prank profile user at H-E-B either to call their bluff or put an end to the communications.

***"Dads Against Predators" assaults Schellhase***

42. Shortly after arriving at H-E-B on September 28, the Individual DAP Defendants aggressively confronted Plaintiff with cameras filming the incident.

43. Upon information and belief, some or all Individual DAP Defendants traveled interstate, at least in part, to confront Plaintiff.

44. While filming the confrontation, the Individual DAP Defendants accused Plaintiff of being a pedophile and being there to meet a 13-year-old boy. They crowded him and followed him around the store, yelling the accusations in an effort to draw attention to and create hysteria surrounding Plaintiff.

45. This interaction escalated as the Individual DAP Defendants invaded Plaintiff's personal space, taunted him, and continued to call him a pedophile and a predator.

46. Those insults included announcements from Defendant Carnicom such as "child predator in Austin, Texas trying to pick up a little boy;" "Austin, Texas: this man's trying to pick up a little boy at the H-E-B for sex;" "James wants to have sex with a little boy;" "child predator," "predator" (multiple times); and "came to meet a 13-year-old boy."

47. The Individual DAP Defendants caused such a loud and chaotic scene moving throughout the H-E-B store that a crowd gathered, including an H-E-B security employee, who witnessed much of the interaction but did not intervene, call for help, or assist Plaintiff in any way.

48. The Individual DAP Defendants tried to instigate Plaintiff by goading Plaintiff to hit them and asking questions such as, "you want to hit us?" and saying, "hit me, hit me, pussy."

49. Plaintiff asked the Individual DAP Defendants to stop following him several times and to get out of his face.

50. After a couple of minutes, unprompted, Defendant Carnicom punched Plaintiff in the jaw. Plaintiff's vision became blurry, and he felt a slight loss of consciousness. He was defenseless and did not fight back.

51. Below is a still image of Defendant Carnicom's fist punching Plaintiff in the face (Defendant Johnson is on the right side of the photo, taunting Plaintiff and impeding his movement):



52. Plaintiff tried to escape, but the Individual DAP Defendants impeded his movement and cornered him several times, preventing Plaintiff from freely moving.

53. Despite the loud, aggressive, and violent confrontation, no H-E-B employee came to defuse the situation, call the police, or otherwise aid Plaintiff.

54. Only semiconscious from Defendant Carnicom's punch, Plaintiff stumbled outside, not knowing where he parked his vehicle.

55. With Plaintiff surrounded by the Individual DAP Defendants, Defendant Campbell smacked Plaintiff in the face, again injuring his jaw:



56. After being punched and smacked, Plaintiff stumbled back inside. There, Defendant Johnson shoved Plaintiff into a crate of produce, causing Plaintiff to lose his balance:



57. Upon information and belief, the security employee flashed a security or law enforcement-type badge.

58. Plaintiff approached the security employee, who witnessed much of the confrontation, pleading for assistance. But instead of intervening or calling the police, the security employee retreated from Plaintiff.

59. As the security employee was backing away from Plaintiff, Defendant Campbell quietly approached Plaintiff from behind, raised a large, hard pumpkin with two hands over his head, and slammed the pumpkin down on Plaintiff in the back of his head. Plaintiff fell face-first to the ground, unconscious.

60. Below are several still images of Plaintiff as Defendant Campbell knocked him unconscious with a pumpkin:



61. The Individual DAP Defendants continuously yelled insults while filming as Plaintiff remained unconscious on the ground.

62. Instead of aiding Plaintiff after he fell to the ground, calling the police, or detaining any of the Individual DAP Defendants, the H-E-B security employee again turned his back and took several steps away to distance himself.

63. After regaining consciousness, Plaintiff was dizzy, nauseous, unable to speak, and could hardly see. Plaintiff finally stood up after several attempts and stumbled away stunned and only semiconscious.

64. While Plaintiff was stumbling away, rather than assisting the injured Plaintiff, the H-E-B security employee moved out of the way even further to avoid Plaintiff altogether.

65. Not once did any H-E-B employee intervene, try to stop the ambush, or aid Plaintiff, even after several minutes of witnessing the confrontation.

66. Plaintiff's immediate physical injuries included severe jaw pain; difficulty moving his jaw; bruises on his back; concussion symptoms, including head and neck pain; dizziness and disorientation; and shoulder pain. His physical injuries took months to heal. Plaintiff still suffers from insomnia, depression, suicidal ideation, and PTSD because of the assault and from what ensued after.

67. Unbeknownst to Plaintiff at the time, upon information and belief, DAP committed a similar setup and assault at another Austin-area H-E-B location in Lakeway, Texas just the day before. There, a group of five DAP assailants—upon information and belief, the same Individual DAP Defendants—allegedly chased a victim, who they accused of being a predator, in H-E-B and attacked him, leaving him with a bloody nose, bloody bare feet, and cuts on his limbs.

68. Upon information and belief, Defendant H-E-B was aware of the DAP assault on the victim at the Lakeway H-E-B location as of September 27, 2024.

***UnitedLex investigates and fires Schellhase***

69. Upon information and belief, at the time of the assault, DAP knew of Plaintiff's employment with UnitedLex, which included his employment agreement.

70. On or around September 30, 2024, DAP sent an edited video of the H-E-B confrontation and assault to the UnitedLex Board of Directors without reasonable justification.

71. On October 3, 2024, UnitedLex locked Plaintiff out of the company network because of the video that it received from DAP. UnitedLex immediately placed Plaintiff on a leave of absence.

72. On October 4, 2024, UnitedLex fired Plaintiff.

73. Plaintiff lost $12.5 million in projected equity compensation because of his wrongful termination. His termination also deprived Plaintiff of $450,000 in severance compensation, $342,740 in pro-rated bonus compensation,[1] and other benefits.

74. Plaintiff has been searching for another job but has not yet found one. The six-time CEO with a strong record of success has now become unemployable with a destroyed professional reputation.

***DAP extorts Schellhase***

75. On October 6, 2024, Plaintiff hired a digital forensic company, Digital Forensic Corp. ("DFC"), to investigate the DAP assault.

76. Defendant Campbell, acting on behalf of the Individual DAP Defendants, messaged Plaintiff saying, "it's time to talk money." (At that time, Plaintiff did not know which DAP co-conspirator he was communicating with).

77. DFC communicated with the Individual DAP Defendants on Plaintiff's behalf to try to learn more.

78. The Individual DAP Defendants attempted to extort Plaintiff.

[1] This number is based on 278 days of employment in 2024.

79. The Individual DAP Defendants demanded Plaintiff pay $400,000 in exchange for DAP agreeing not to disseminate the assault video.

80. The Individual DAP Defendants messaged Plaintiff several times.

81. The Individual DAP Defendants pressured Plaintiff to make a large extortion payment by explaining how large Defendant DAP's platform was and how much money they would make if they posted the video:

- "Okay, [w]hats a fair price? There's four of us and we know who you are. We never gave this DEAL before. You're catch 721!!"
- "We have millions of followers! Our biggest video has over two hundred million views!"
- "400,00 the deal we made as a team. Otherwise we are exposing you to your wife and businesses for who you really are!! You have the money just get this over with and move on with you life, and you get to keep your life as you know it. But if we ever catch you again there will be no second chances!!"
- "We make 400,000 a year as a team"
- "You don't understand your video is gonna make a us alot of money."

82. The Individual DAP Defendants also pressured Plaintiff because of his position as CEO of UnitedLex:

- "You're the fucking CEO of multiple places your a multimillionaire we know everything about you . . . everything stop fucking playing games with me dude, shits gonna get bad for you! Your life's gonna work is gonna go straight down the fucking drain and we are gonna get Rich with or with out contribution to the team."

- "Your video alone is gonna make up 200,000 when they find out who you are."

83. The Individual DAP Defendants threatened that if Plaintiff did not pay, they would disseminate the video to expose Plaintiff to his wife, his business, and DAP's "millions of followers."

84. The Individual DAP Defendants also told Plaintiff that if he paid them $400,000, he would "get to keep [his] life as [he knew] it."

85. During the extortion scheme, in an effort to advise Plaintiff where to send payment, Defendant Campbell sent a picture of his own driver's license to the Plaintiff.

86. Upon information and belief, the Individual DAP Defendants sent the various extortion messages through interstate wire.

87. Moreover, Defendant Campbell confirmed, "[t]here's four of us and we know who you are. We never gave this DEAL before."

88. The Individual DAP Defendants also warned Plaintiff that if he refused to talk about a payment, DAP would reveal the accusations to all of Plaintiff's connections.

89. Plaintiff (through DFC), at Defendant Campbell direction, wired a small sum of money to a bitcoin account operated by Defendant Campbell to validate the account.

90. On October 11, 2024, however, after Plaintiff (through DFC) refused to pay DAP's extortion demand of $400,000, DAP posted the edited video of the Plaintiff encounter and assault across its social media platforms including X, Reddit, and TikTok. Millions of people viewed the video.

91. The Individual DAP Defendants shared Plaintiff's private phone number online.

92. After the video was posted, Plaintiff received hundreds of harassing and threatening texts and voicemails. Among them were messages such as:

- "James, look out your window buddy. Look out your window.. SURPRISE;"
- "I am going to come see you tonight at your house, peepee touching bitch;"
- "Say goodbye to your company . . . all of your clients and contracts are done with. everyone will know;"
- "You got that pumpkin smashed on your fucking head. Goddamn. That was funny as fuck man;"
- "you have been warned faggot, see you tomorrow."

93. Plaintiff suffered and continues to suffer serious emotional distress and financial hardship because of Defendants' misconduct.

94. After posting the video, Defendant Campbell and Defendant Carnicom were indicted in Texas for the September 28, 2024, assault on Plaintiff based on charges of participating in organized criminal activity.

***Defendant Stake profits from the assault clip***

95. Defendant Stake, an online gambling platform, incentivized, encouraged, promoted, and profited from Defendant DAP's outrageous and violent treatment of Plaintiff.

96. Upon information and belief, Defendant Stake uses viral videos posted by other accounts to advertise its gambling site.

97. Upon information and belief, users can become "affiliates" of Defendant Stake by allowing Defendant Stake to use the affiliate's videos to place Defendant Stake's logo on the video for advertising.

98. Upon information and belief, Defendant Stake pays a commission to affiliates based on the revenue generated from new users who began using Stake because of the affiliate's video. Defendant Stake, therefore, incentivizes (because it survives on) viral or outrageous clips.

99. Upon information and belief, Defendant Stake and its affiliates generally earn more revenue for more viral or outrageous clips.

100. Upon information and belief, Defendant DAP entered into an affiliate agreement with Defendant Stake.

101. Defendant Stake placed its logo, or allowed its logo to be placed, on a clip of Defendant DAP's assault on Plaintiff that knocked him unconscious. Defendant Stake placed its "Stake" logo along with the line "GAMBLE RESPONSIBLY | #AD." Below is a screenshot of that clip:




102. Over 44 million people viewed the clip with the "Stake" logo.

103. Upon information and belief, Defendant Stake profited off Plaintiff's assault clip by using it as advertising to drive traffic and customers to its website.

104. Upon information and belief, Defendant DAP profited from its affiliate agreement with Defendant Stake by earning, and continuing to earn, commission from the wagers placed by Defendant Stake customers who joined Defendant Stake because of the clip of Plaintiff's assault.

105. Upon information and belief, at the time that Defendant DAP and Defendant Stake entered into an affiliate agreement, Defendant Stake knew or had reason to know that Defendant DAP routinely posted videos depicting real-life, violent assaults.

106. Upon information and belief, Defendant Stake incentivized and encouraged the scheme and assault on Plaintiff.

***DAP's modus operandi***

107. Austin Police issued an arrest warrant (D-1-DC-24-303581) for Defendant Carnicom on charges of engaging in organized criminal activity related to the September 28, 2024, incidents described in this Complaint.

108. Likewise, Austin Police issued two arrest warrants (D-1-DC-24-303578 and D-1-DC-24-303577) for Defendant Campbell on charges of engaging in organized criminal activity and intentional bodily injury to the elderly related to the incidents described in this Complaint.

109. Lakeway Police issued an arrest warrant (D-1-DC-24-600615) for Defendant Carnicom on charges of engaging in organized criminal activity related to Defendant Carnicom's September 27, 2024, illegal conduct against another victim at the H-E-B store in Lakeway, Texas.

110. Likewise, Lakeway Police issued an arrest warrant (D-1-DC-24-600618) for Defendant Campbell on charges of engaging in organized criminal activity related to Defendant Campbell's September 27, 2024, illegal conduct against another victim at an H-E-B store in Lakeway, Texas.

111. The Individual DAP Defendants committed similar assault and extortion schemes against numerous other victims across the United States.

112. In fact, Defendant Carnicom was arrested in Clay County, Florida (Case Nos. 2026CF000434, 435, and 436) on charges of extortion and battery for engaging in the same or similar scheme as alleged in this Complaint three separate times, including on or around January 22, 2026, January 23, 2026, and February 2, 2026.

113. Upon information and belief, Defendant Campbell also participated in the assault and extortion schemes in Clay County, Florida as alleged in Case Nos. 2026CF000434, 435, and 436.

114. According to several Clay County, Florida Affidavits for Arrest Warrants against Defendant Carnicom, Defendant Carnicom "has several out of state warrants (non-extraditable), including assault and public order crimes, in other states all which stem from similar incidents."

115. In a video recorded around the time of Plaintiff's assault, Defendant Carnicom bragged about having "hella warrants; so many fucking warrants" and admitted to having warrants in 25% of U.S. states.

116. Upon information and belief, Defendant DAP and its members, including the Individual DAP Defendants, have assaulted and extorted and continue to assault and extort dozens of other victims through schemes substantially similar to the scheme against Plaintiff.

117. Defendant DAP routinely engages in interstate travel and affects interstate commerce, employing its unlawful scheme against unsuspecting victims throughout the United States. Likewise, Defendant DAP routinely uses instrumentalities of interstate commerce, such as computers, cell phones, and internet to communicate with victims, receive extortion payments, and otherwise employ its schemes. They also routinely target victims at large businesses and other facilities of interstate commerce, such as H-E-B.

## COUNT I – ASSAULT/BATTERY[2]
## (Against Defendants Carnicom, Campbell, Johnson, Wileman, Mundy, DAP, DAP Cares, and Stake)

118. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

119. Defendant Carnicom intentionally and knowingly caused harmful and offensive physical contact with Plaintiff by, among other things, punching Plaintiff in the jaw.

120. Defendant Campbell intentionally and knowingly caused harmful and offensive physical contact with Plaintiff by, among other things, smacking Plaintiff in the face and by smashing a pumpkin on the back of Plaintiff's head.

121. Defendant Johnson intentionally and knowingly caused harmful and offensive physical contact with Plaintiff by, among other things, shoving Plaintiff while insulting and threatening Plaintiff.

122. Defendants' wrongful acts were not justified by law and were made without Plaintiff's consent.

123. As a direct and proximate result of the Individual DAP Defendants' assaults against Plaintiff, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including past and future medical expenses, lost earnings, lost earning capacity, physical impairment, physical pain and suffering, mental anguish, property damage, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of the Individual DAP Defendants' malicious conduct.

---

[2] "Defendants" as used in a particular count refers to the Defendants against whom that particular count is asserted.

124. Defendant Wileman is liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, and Carnicom because Defendant Wileman aided and abetted Defendants DAP, Campbell, Johnson, and Carnicom's assaults against Plaintiff by planning the scheme, encouraging them, filming the confrontation, falsely imprisoning Plaintiff, ratifying the assaults, and otherwise substantially assisting with the assaults.

125. Defendants Mundy, DAP, and DAP Cares are directly liable for the actions and harm caused by Defendant Carnicom, who is the co-founder and co-owner of Defendants DAP and DAP Cares, and is in partnership or a joint venture with Defendant Mundy as co-owners of the unincorporated entity, Defendant DAP.

126. Defendants Mundy, DAP, and DAP Cares are vicariously liable for the actions and harm caused by Defendants Campbell, Johnson, and Wileman and in the alternative, Defendant Carnicom, because Defendants Mundy, DAP, and DAP Cares exercised control over the Individual DAP Defendants, oversaw their scheme, benefited from their conduct, and ratified their conduct by, among other things, posting the video of the illegal conduct on their online platform and profiting from it.

127. Defendant Stake is liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, and Carnicom because Defendant Stake aided and abetted Defendants DAP, Campbell, Johnson, and Carnicom's illegal actions by encouraging, incentivizing, profiting from, and otherwise substantially assisting their illegal actions.

128. Alternatively, Defendant Stake is vicariously liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, and Carnicom because Defendant Stake ratified Defendants DAP, Campbell, Johnson, Wileman, and Carnicom's illegal actions. Defendants DAP, Campbell, Johnson, Wileman, and Carnicom, acting as agents creating advertising content for

Defendant Stake, assaulted Plaintiff. Defendant Stake ratified the assault by placing its logo, or allowing its logo to be placed, as an advertisement depicting the assault, thereby adopting the clip as its own.

**COUNT II – FALSE IMPRISONMENT**
**(Against Defendants Carnicom, Campbell, Johnson, Wileman, Mundy, DAP, DAP Cares, and Stake)**

129. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

130. The Individual DAP Defendants knowingly and willfully restrained Plaintiff through violence, threats, and by cornering him within bounded physical spaces, which interfered with Plaintiff's freedom.

131. The Individual DAP Defendants knowingly and willfully restrained Plaintiff without Plaintiff's consent and without legal authority or justification.

132. As a direct and proximate result of the Individual DAP Defendants' false imprisonment of Plaintiff, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including past and future medical expenses, lost earnings, lost earning capacity, physical impairment, physical pain and suffering, mental anguish, property damage, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of the Individual DAP Defendants' malicious conduct.

133. Defendants Mundy, DAP, and DAP Cares are directly liable for the actions and harm caused by Defendant Carnicom, who is the co-founder and co-owner of Defendants DAP and DAP Cares, and is in partnership or joint venture with Defendant Mundy as co-owners of the unincorporated entity, Defendant DAP.

134. Defendants Mundy, DAP, and DAP Cares are vicariously liable for the actions and harm caused by Defendants Campbell, Johnson, Wileman, and in the alternative, Defendant Carnicom, because Defendants Mundy, DAP, and DAP Cares exercised control over the Individual DAP Defendants, oversaw their scheme, benefitted from their conduct, and ratified their conduct by, among other things, posting the video of the illegal conduct on their online platform and profiting from it.

135. Defendant Stake is liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, Wileman, and Carnicom because Defendant Stake aided and abetted Defendants DAP, Campbell, Johnson, Wileman, and Carnicom's illegal actions by encouraging, incentivizing, profiting from, and otherwise substantially assisting their illegal actions.

136. Alternatively, Defendant Stake is vicariously liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, Wileman and Carnicom because Defendant Stake ratified Defendants DAP, Campbell, Johnson, Wileman and Carnicom's illegal actions. Defendants DAP, Campbell, Johnson, Wileman, and Carnicom, acting as agents creating advertising content for Defendant Stake, falsely imprisoned Plaintiff. Defendant Stake ratified the false imprisonment by placing its logo, or allowing its logo to be placed, as an advertisement depicting the false imprisonment, thereby adopting the clip as its own.

**COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendants Carnicom, Campbell, Johnson, Wileman, Mundy, DAP, DAP Cares, and Stake)**

137. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

138. Defendants intentionally or recklessly caused Plaintiff to suffer severe emotional distress through their extreme and outrageous scheme against Plaintiff.

139. Defendants' scheme was so outrageous in character and degree, went beyond all bounds of decency, and was atrocious and utterly intolerable for a civilized community because Defendants targeted and deceived Plaintiff through an online dating app; followed Plaintiff to a public location; while filming, threatened, harassed, restrained, berated, defamed, and assaulted Plaintiff in public; attempted to extort Plaintiff out of $400,000; defamed Plaintiff to his employer; disseminated the video of their illegal conduct online to millions of people; deliberately destroyed Plaintiff's personal and professional reputation; and encouraged their online followers to continually harass and threaten Plaintiff and his family, including threats to physically harm and kill them.

140. Defendants also manufactured an encounter in an extreme and outrageous manner that was calculated to—and did—cause extreme emotional distress to Plaintiff. Posing first as adult men romantically interested in Plaintiff, then claiming to be minors, and then persisting after Plaintiff refused and tried to end the conversations, the Individual DAP Defendants lured Plaintiff to a public place for the purpose of filming his humiliation and profiting from it.

141. Defendants also extorted Plaintiff in an extreme and outrageous manner. In particular, Defendant Campbell, acting for the Individual DAP Defendants, demanded $400,000 from Plaintiff and threatened that, unless Plaintiff paid, Defendants would expose him to his wife, his business, and DAP's "millions of followers." Defendants harassed and intimidated Plaintiff with their demands over several days through repeated messages from multiple phone numbers.

142. When Plaintiff refused to pay, Defendants carried out the threat. Defendants released the edited video, identifying Plaintiff by name and employer, across DAP's website and social-media accounts to millions of followers, with the purpose and effect of turning that audience on Plaintiff. Defendant Stake amplified the release by placing its logo, or allowing its logo to be

placed, on an clip of the assault and used the clip as an advertisement for its gambling site, and over 44 million people viewed that clip. Hundreds of threatening texts and voicemails foreseeably followed—as Defendants intended that they would—including "James, look out your window buddy. Look out your window. SURPRISE," "I am going to come see you tonight at your house," and "you have been warned faggot, see you tomorrow." Upon information and belief, Defendants continue to profit from the video. Upon information and belief, Plaintiff received more threatening messages because of Defendant Stake's amplification.

143. As a direct and proximate result of the Individual DAP Defendants' intentional infliction of emotional distress against Plaintiff, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including past and future medical expenses, lost earnings, lost earning capacity, physical impairment, physical pain and suffering, mental anguish, property damage, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of the Individual DAP Defendants' malicious conduct.

144. Defendants Mundy, DAP, and DAP Cares are directly liable for the actions and harm caused by Defendant Carnicom, who is the co-founder and co-owner of Defendants DAP and DAP Cares, and is in partnership or joint venture with Defendant Mundy as co-owners of the unincorporated entity, Defendant DAP.

145. Defendants Mundy, DAP, and DAP Cares are vicariously liable for the actions and harm caused by Defendants Campbell, Johnson, Wileman, and in the alternative, Defendant Carnicom, because Defendants Mundy, DAP, and DAP Cares exercised control over the Individual DAP Defendants, oversaw their scheme, benefitted from their conduct, and ratified their conduct by, among other things, posting the video of the illegal conduct on their online platform and profiting from it.

146. Defendant Stake is liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, Wileman, and Carnicom because Defendant Stake aided and abetted Defendants DAP, Campbell, Johnson, Wileman, and Carnicom's illegal actions by encouraging, incentivizing, promoting, profiting from, and otherwise substantially assisting their illegal actions.

147. Alternatively, Defendant Stake is vicariously liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, Wileman and Carnicom because Defendant Stake ratified Defendants DAP, Campbell, Johnson, Wileman, and Carnicom's illegal actions. Defendants DAP, Campbell, Johnson, Wileman, and Carnicom, acting as agents creating advertising content for Defendant Stake, intentionally inflicted emotional distress upon Plaintiff. Defendant Stake ratified the intentional infliction of emotional distress by placing its logo, or allowing its logo to be placed, as an advertisement depicting the intentional infliction of emotional distress, thereby adopting the clip as its own.

**COUNT IV – CIVIL RICO LIABILITY (18 U.S.C. § 1962(c))**
**(Against Defendants Carnicom, Campbell, Johnson, Wileman,**
**Mundy, DAP, and DAP Cares)**

148. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

149. Defendants Carnicom, Campbell, Johnson, Wileman, Mundy, DAP, and DAP Cares are each individually "RICO persons" as defined by 18 U.S.C. § 1961(3).

150. Defendants Carnicom, Campbell, Mundy, DAP, and DAP Cares are an association-in-fact and formed a "RICO Enterprise" as defined by 18 U.S.C. § 1961(4) (the "DAP Enterprise").

151. The DAP Enterprise has functioned as a continuing unit since at least 2024, with an identifiable structure, and with each person fulfilling a specific role to carry out the DAP Enterprise's purpose.

152. The DAP Enterprise operates for a purpose that is distinct from the individual purposes of the RICO persons because the DAP Enterprise collectively operates, with consolidated resources, for the purpose of generating revenue by posing as minors, luring unsuspecting victims to a public location, filming an assault against the victim while alleging the victim is a child predator, extorting the victim by threatening to disseminate the video if the victim refuses to pay money, and if the victim fails to pay, posting the video online to make money.

153. The DAP Enterprise has an identifiable structure, with each person fulfilling a specific role to facilitate its purpose. For example:

- Defendants Carnicom, Mundy, and Campbell create fake dating profiles, posing as other adults and as minors to lure victims to public locations.
- Defendants Carnicom, Mundy, and Campbell film videos of their interactions and berate, harass, defame, threaten, and assault unsuspecting victims in public, accusing them of being pedophiles.
- Defendants Carnicom and Mundy recruit and hire people such as Defendants Campbell, Johnson, and Wileman to assist in the confrontation, including by filming, assaulting, and otherwise supporting the scheme.
- Defendants Carnicom, Mundy, and DAP use their experience and expertise to oversee operations, coordinate the assaults, and strategize to create viral content.
- Defendants Carnicom, Mundy, and Campbell attempt to extort victims by promising not to disseminate the video, which threatens to expose the victim as an alleged pedophile, in exchange for money or other things of value.

- Defendants Carnicom, Mundy, Campbell, and DAP disseminate the assault videos and post them on DAP's website with the intent of generating revenue.
- Defendant DAP Cares operates as a 501(c)(3) organization that transacts, holds, and funnels revenue generated through the extortion and/or assault video.
- Defendant DAP collects money, operates a website, and serves as a recognizable and notorious trade name and brand.
- Upon information and belief, Defendants Carnicom, Mundy, DAP, and DAP Cares fund expenses related to travel, payroll, equipment, and other expenses necessary to carry out the operations of the DAP Enterprise.

154. The DAP Enterprise operates beyond the normal affairs of any one Defendant.

155. The DAP Enterprise exists separate and apart from the pattern of racketeering activity alleged herein. Below are several examples the DAP Enterprise's purported lawful operations that are distinct from the racketeering activities:

- Defendants Carnicom, Mundy, DAP, and DAP Cares operate for a purpose other than the racketeering activity including, according to Defendant DAP's website, to "educate families, support victims, and encourage meaningful conversations about online child exploitation."
- Defendants Carnicom, Mundy, DAP, and DAP Cares operate an online store selling merchandise such as brand t-shirts and hoodies, including, at one point, a t-shirt with an image of Plaintiff being assaulted with the pumpkin..
- Defendants Carnicom, Mundy, DAP, and DAP Cares operate a 501(c)(3) organization, through DAP Cares, with the purported purpose of "providing

direct assistance to victims in crisis, supporting organizations that serve survivors, and investing in programs that help protect children across the country."

- Defendant Mundy operates through DAP and DAP Cares as, according to Defendant DAP's website, a "respected speaker and educator on predator behavior, online safety, and prevention."
- Defendant Carnicom operates through DAP and DAP Cares as, according to Defendant DAP's website, a "respected advocate for survivors, a mentor to fellow predator catchers . . ."

156. Upon information and belief, the DAP Enterprise was formed in or before 2024 and still operates as of the date of this Complaint. The DAP Enterprise continues to manufacture opportunities to assault victims, film those assaults, extort victims, and post videos online for profit.

157. The DAP Enterprise engages in interstate commerce by employing its unlawful schemes throughout the United States, by traveling to various states to employ its scheme, and by using instrumentalities of interstate commerce such as the internet, financial accounts, cell phones, and social media for its unlawful purposes.

158. Defendants have been employed by or associated with the DAP Enterprise; have participated in the management and operations of the DAP Enterprise; and have deliberately defrauded, defamed, and extorted Plaintiff and others.

159. Defendants have knowingly conducted or participated in the operations of the DAP Enterprise through a "pattern of racketeering activity" as defined by 18 U.S.C. §§ 1961(1) and (5).

160. Such racketeering activity includes extortion, which is a felony under various state laws, including Texas and Ohio; interference with commerce through extortion or violence under 18 U.S.C. § 1951; wire fraud under 18 U.S.C. § 1343; and interstate travel in aid of racketeering under 18 U.S.C. § 1952.

- Defendants committed felony extortion under state law because they threatened to expose a matter tending to subject Plaintiff to hatred, contempt, or ridicule, or to damage Plaintiff's personal or business repute with the purpose of obtaining a valuable benefit. *See* Tex. Penal Code §§ 31.02-.03.
- Defendants committed federal wire fraud under 18 U.S.C. § 1343 because they devised a scheme to defraud or to obtain money by means of fraudulent pretenses or representations through writings, signs, signals, or pictures via interstate wire communications. Defendants, in fact, fraudulently represented themselves through false dating profiles and other false statements sent via the internet and phone communications and between Ohio and Texas for the purpose of extorting Plaintiff for value.
- Defendants interfered with commerce by extortion or violence in violation of 18 U.S.C. § 1951 because Defendants affected commerce by their extortion, conspiracy or attempt to extort, and committed violence against Schellhase in furtherance of their extortion plan. Defendants' scheme affected commerce, in part, because Defendants assaulted Plaintiff in a public grocery store, utilized

instrumentalities of interstate commerce in their extortion scheme, and accepted a small bitcoin payment from Plaintiff via wire communications.

- Defendants traveled interstate to aid in the racketeering enterprise in violation of 18 U.S.C. § 1952 because Defendants traveled interstate or used a facility of interstate commerce to commit a crime of violence against Schellhase in furtherance of the extortion scheme. Upon information and belief, some or all Individual DAP Defendants traveled from out of state into Texas, in part, to assault Schellhase. Moreover, Defendants used H-E-B, a facility of interstate commerce, to assault Plaintiff.

161. These predicate acts are a continuing pattern of racketeering activity, and they serve as the DAP Enterprise's *modus operandi*. For example:

- On October 6, 2024, before disseminating Plaintiff's assault video to the public, Defendant Campbell messaged Plaintiff saying, "its time to talk money." Defendant Campbell, showing several concerted extortion attempts, also sent the following messages at different times:
- "Okay, Whats a fair price? There's four of us and we know who you are. We never gave this DEAL before. You're catch 721!!"
- "We have millions of followers! Our biggest video has over two hundred million views!"
- "Your video alone is gonna make up 200,000 when they find out who you are."
- "400,00 the deal we made as a team. Otherwise we are exposing you to your wife and businesses for who you really are!! You have the money just get this

over with and move on with you life, and you get to keep your life as you know it. But if we ever catch you again there will be no second chances!!"

- "We make 400,000 a year as a team"
- "You don't understand your video is gonna make a us alot of money."
- "You're the fucking CEO of multiple places your a multimillionaire we know everything about you and where you live you wifes Holly everything stop fucking playing games with me dude, shits gonna get bad for you! Your life's gonna work is gonna go straight down the fucking drain and we are gonna get Rich with or with out contribution to the team."
- Around that time, before disseminating Plaintiff's assault video to the public, a different phone number, upon information and belief, used by one of the Individual DAP Defendants, contacted Plaintiff in another extortion attempt:
- "If you don't call me and talk, I'll contact everyone you ever did business with, all your family members and friends . . ."
- "You've been warned faggot"
- Defendant Carnicom was arrested in Clay County, Florida (Case No. 2026CF000434) on charges of extortion and battery for engaging in the same or similar scheme as alleged in this Complaint on or around January 23, 2026.
- Defendant Campbell participated in the assault and extortion scheme as alleged in Case No. 2026CF000434.
- Defendant Carnicom was arrested in Clay County, Florida (Case No. 2026CF000435) on charges of extortion for engaging in the same or similar scheme as alleged in this Complaint on or around January 22, 2026.

- Upon information and belief, Defendant Campbell participated in the assault and extortion scheme as alleged in Case No. 2026CF000435.
- Defendant Carnicom was arrested in Clay County, Florida (Case No. 2026CF000436) on charges of extortion and battery for engaging in the same or similar scheme as alleged in this Complaint on or around February 2, 2026.
- Upon information and belief, Defendant Campbell participated in the assault and extortion scheme as alleged in Case No. 2026CF000436.
- According to several Clay County, Florida Affidavits for Arrest Warrants against Defendant Carnicom, Defendant Carnicom "has several out of state warrants (non-extraditable), including assault and public order crimes, in other states all which stem from similar incidents."
- Defendants' website and social media accounts contain hundreds of videos depicting Defendants Carnicom, Mundy, Campbell, and others engaging in viral confrontations with alleged pedophiles and assaulting them. Upon information and belief, Defendants, through the DAP Enterprise, committed racketeering activities including extortion, wire fraud, interfering with commerce through violence, or committing the aid of racketeering through interstate travel against the victims depicted in other assault videos.
- The Individual DAP Defendants claimed to have completed 720 schemes similar to the one against Plaintiff, including an assault against another victim in Texas the day before.

162. A continuous and related pattern of racketeering activity, therefore, exists because the DAP Enterprise has operated under the similar scheme of extortion, wire fraud, interference with commerce, and interstate travel—the predicate acts of the racketeering activity—for several years, with the same participants, numerous different victims, similar methods of commission, within a broad geographic scope, and with no sign of an intent to cease its operations.

163. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer injuries and economic damages, including the bitcoin paid in response to the extortionate demands, past and future medical expenses, lost earnings, lost earning capacity, loss of reputation, loss of business relationships, and other damages recoverable under federal law.

164. Plaintiff is entitled to treble damages, costs, and reasonable attorneys' fees as described in 18 U.S.C. § 1964(c).

**COUNT V – CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(d))**
**(Against Defendants Carnicom, Campbell, Johnson, Wileman, Mundy, DAP, and DAP Cares)**

165. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

166. Since at least 2024, Defendants willfully combined, conspired, and agreed with one another to violate 18 U.S.C. § 1962(c), that is, to conduct or participate in the affairs of the DAP Enterprise through a pattern of racketeering activities in violation of 18 U.S.C. § 1962(d).

167. As alleged in the above paragraphs, including the allegations under Count IV, Defendants combined and agreed to commit a substantive RICO offense and did in fact commit the substantive RICO offense, which they had the manner and means to commit.

168. As alleged in the above paragraphs, including the allegations under Count IV, Defendants knew of the essential nature of the DAP Enterprise and agreed to the overall objective of the substantive RICO offense.

169. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer injuries and economic damages, including past and future medical expenses, lost earnings, lost earning capacity, loss of reputation, loss of business relationships, and other damages recoverable under federal law.

170. Plaintiff is entitled to treble damages, costs, and reasonable attorneys' fees as described in 18 U.S.C. § 1964(c).

**COUNT VI – CIVIL CONSPIRACY**
**(Against Defendants Carnicom, Campbell, Johnson, Wileman, Mundy, DAP, and DAP Cares)**

171. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

172. In or around September 2024, Defendants willfully combined and agreed to assault, falsely imprison, intentionally inflict emotion distress, invade privacy, interfere with contracts, earn unjust enrichment, defame, and extort Plaintiff.

173. Defendants did, in fact, complete those torts through one or more unlawful, overt acts.

174. There was a meeting of the minds between Defendants because they schemed over the course of several days and each participated in filming, assaulting, or extorting Plaintiff and intended to benefit from the revenue or extortion payments generated.

175. Defendants had an object to be accomplished by their agreement because they intended to generate revenue from viral videos of the assault or through their extortion of Plaintiff.

176. Defendants committed overt acts in furtherance of their conspiracy.

177. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including past and future medical expenses, lost earnings, lost earning capacity, physical impairment, physical pain and suffering, mental anguish, property damage, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of Defendants' malicious conduct.

178. Defendants Mundy, DAP, and DAP Cares are directly liable for the actions and harm caused by Defendant Carnicom, who is the co-founder and co-owner of Defendants DAP and DAP Cares, and is in partnership or joint venture with Defendant Mundy as co-owners of the unincorporated entity, Defendant DAP.

179. Defendants Mundy, DAP, and DAP Cares are vicariously liable for the actions and harm caused by Defendants Campbell, Johnson, Wileman, and in the alternative, Defendant Carnicom, because Defendants Mundy, DAP, and DAP Cares exercised control over the Individual DAP Defendants, oversaw their scheme, benefitted from their conduct, and ratified their conduct by, among other things, posting the video of the illegal conduct on their online platform and profiting from it.

**COUNT VII – TORTIOUS INTERFERENCE WITH CONTRACTS**
**(Against Defendants Carnicom, Campbell, Johnson, Wileman,**
**Mundy, DAP, and DAP Cares)**

180. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

181. Plaintiff had a valid employment contract with UnitedLex, his employer.

182. Defendants knew or had reason to know that Plaintiff was employed as a CEO with UnitedLex and had a valid employment contract with UnitedLex.

183. In fact, demonstrating their knowledge of Plaintiff, the Individual DAP Defendants said "You're the fucking CEO of multiple places your a multimillionaire we know everything about you."

184. And Defendants knew about Plaintiff's employment with UnitedLex because they sent the assault video to UnitedLex.

185. Defendants were not parties to Plaintiff's employment contract with UnitedLex.

186. Defendants intentionally interfered with Plaintiff's employment contract by sending to UnitedLex a clip of the assault video, which, among other things, falsely accused Plaintiff as being a child predator.

187. Defendants' purpose in sending the video to UnitedLex was to interfere with Plaintiff's employment and destroy his reputation.

188. Before sending the video to UnitedLex, Defendants told Plaintiff that their plan was to ruin his life since he did not pay $400,000. Defendants said, if Plaintiff did not pay, "we are exposing you to your wife and businesses for who you really are!! You have the money just get this over with and move on with you life, and you get to keep your life as you know it."

189. When Plaintiff did not pay, Defendants followed through with their stated plan and sent the video to UnitedLex.

190. As a result of Defendants' intentional and tortious interference, UnitedLex terminated Plaintiff's employment contract.

191. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including lost earnings, lost earning capacity, loss of reputation, loss of business relationships, mental anguish, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of Defendants' malicious conduct.

192. Defendants Mundy, DAP, and DAP Cares are directly liable for the actions and harm caused by Defendant Carnicom, who is the co-founder and co-owner of Defendants DAP and DAP Cares, and is in partnership or joint venture with Defendant Mundy as co-owners of the unincorporated entity, Defendant DAP.

193. Defendants Mundy, DAP, and DAP Cares are vicariously liable for the actions and harm caused by Defendants Campbell, Johnson, Wileman, and in the alternative, Defendant Carnicom, because Defendants Mundy, DAP, and DAP Cares exercised control over Defendants Campbell, Johnson, Wileman, and Carnicom, oversaw their scheme, benefitted from their conduct, and ratified their conduct by, among other things, posting the video of the illegal conduct on their online platform, sending it to UnitedLex, and profiting from it.

**COUNT VIII – BUSINESS DISPARAGEMENT**
**(Against Defendants Carnicom, Campbell, Johnson, Wileman, Mundy, DAP, DAP Cares, and Stake)**

194. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

195. Defendants published false and disparaging information about Plaintiff by publicly accusing Plaintiff of being a child predator at H-E-B in front of many witnesses and by posting a recording of the confrontation and accusations online.

196. Defendants' false and disparaging comments also include:

- Defendant Carnicom: "child predator in Austin, Texas trying to pick up a little boy."
- Defendant Carnicom: "Austin, Texas: this man's trying to pick up a little boy at the H-E-B for sex."
- Defendant Carnicom: "James wants to have sex with a little boy."
- Defendant Carnicom: "child predator," "predator" (multiple times).
- Unidentified Individual DAP Defendant: "came to meet a 13-year-old boy."

197. Defendants disparaged Plaintiff with malice because Defendants knew their statements were false or recklessly disregarded the truth or falsity of the statements. Plaintiff did not visit the H-E-B intending or expecting to meet a minor boy. Moreover, Plaintiff did not visit the H-E-B intending to have sex with a minor boy, which Defendants knew.

198. Defendants published their disparaging statements without justification or privilege.

199. As a result of Defendants' disparaging comments, Plaintiff has suffered direct pecuniary harm.

200. Defendants' disparaging comments substantially and directly contributed to third parties refusing to do business with Plaintiff, which includes UnitedLex terminating Plaintiff's employment contract after learning of Defendants' false and disparaging comments.

201. Plaintiff's pecuniary harm, which includes the specific loss of Plaintiff's business contract and lost income from salary, bonus, company equity, benefits and future earnings, is direct and liquidated because Defendants deliberately sent the video disparaging Plaintiff to UnitedLex with the intent that UnitedLex would terminate Schellhase's contract, which UnitedLex did.

202. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including lost earnings, lost earning capacity, loss of reputation, loss of business relationships, mental anguish, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of Defendants' malicious conduct.

203. Defendant Stake is liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, Wileman, and Carnicom because Defendant Stake aided and abetted Defendants DAP, Campbell, Johnson, Wileman, and Carnicom's illegal actions by encouraging, incentivizing, profiting from, and otherwise substantially assisting their illegal actions.

204. Alternatively, Defendant Stake is vicariously liable for the actions and harm caused by Defendants DAP, Campbell, Johnson, Wileman and Carnicom because Defendant Stake ratified Defendants DAP, Campbell, Johnson, Wileman, and Carnicom's illegal actions. Defendants DAP, Campbell, Johnson, Wileman, and Carnicom, acting as agents creating advertising content for Defendant Stake, intentionally disparaged Plaintiff. Defendant Stake ratified the disparagement by placing its logo, or allowing its logo to be placed, as an advertisement depicting Plaintiff and falsely referring to Plaintiff as a child predator, thereby adopting the clip and disparagement as its own.

**COUNT IX – UNJUST ENRICHMENT**
**(Against Defendants Carnicom, Mundy, DAP, DAP Cares, and Stake)**

205. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

206. Defendants Carnicom, Mundy, DAP, and DAP Cares unjustly obtained a benefit from Plaintiff by, among other things, filming videos of members defaming and assaulting Plaintiff

for the purpose of creating viral internet content, and then by posting the assault and defamatory video online and generating revenue.

207. Defendant Stake likewise unjustly obtained a benefit from Plaintiff by using the assault video as an advertisement for the purpose of driving traffic to its website and generating revenue. Upon information and belief, Defendant Stake, in fact, generated revenue from the assault video.

208. Defendants took unfair advantage of Plaintiff.

209. It would be unconscionable to allow Defendants to retain the benefit that they obtained through their illegal conduct and to Plaintiff's detriment.

210. Allowing Defendants to retain the benefit of the assault video would incentive their conduct, and it would be unjust.

211. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including lost earnings, lost earning capacity, loss of reputation, loss of business relationships, mental anguish, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages, restitution, and disgorgement of benefits.

**COUNT X – INVASION OF PRIVACY (MISAPPROPRIATION)**
**(Against Defendants Carnicom, Mundy, DAP, DAP Cares, and Stake)**

212. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

213. Defendants Carnicom, Mundy, DAP, and DAP Cares misappropriated Plaintiff's name and image for the value associated with it by filming a video identifying Plaintiff's name, posting the video online, and profiting from the viral dissemination.

214. Defendant Stake misappropriated Plaintiff's name and image for the value associated with it by placing its logo, or allowing its logo to be placed, across a clip of Plaintiff being assaulted with a pumpkin and using the clip as an advertisement for its business.

215. Plaintiff is clearly depicted in the assault video and during the H-E-B confrontation, Defendants specifically referred to Plaintiff by name.

216. Plaintiff's name and image had value associated with it because Plaintiff was the CEO of UnitedLex, a large, international corporation with hundreds of employees. Plaintiff was the face of the company and often the subject of public interviews and articles. Plaintiff was also the former CEO of several other large companies.

217. Defendants benefited from misappropriating Plaintiff's name and image for the value associated with it because, upon information and belief, Defendants' videos gain more attention, and therefore more revenue, when their videos depict recognizable, high-powered, well-connected victims, such as Plaintiff.

218. Defendants misappropriated Plaintiff's name and image for the value associated with it as a CEO of a large corporation because Defendants specifically referenced Plaintiff's employment during the H-E-B confrontation and during their extortion scheme.

219. In fact, the Individual DAP Defendants admitted to the unique value that Plaintiff's name and image provided to Defendant DAP when they claimed, "Your video alone is gonna make up 200,000 *when they find out who you are.*" (emphasis added).

220. Upon information and belief, when publishing the assault video, Defendants specifically referred to Plaintiff as a CEO, benefitting from the value associated with Plaintiff's name.

221. Defendants gained a benefit from Plaintiff's image and likeness by posting the video depicting Plaintiff online and generating revenue from it.

222. Defendants posted the video depicting Plaintiff's name and image without Plaintiff's consent.

223. Defendants did not have authority or legal justification to post the video depicting Plaintiff's name and image.

224. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including lost earnings, lost earning capacity, loss of reputation, loss of business relationships, mental anguish, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of Defendants' malicious conduct.

**COUNT XI – PREMISES LIABILITY**
**(Against Defendant H-E-B)**

225. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

226. Defendant H-E-B is a landowner who controls and operates the H-E-B store located at 2652 Lake Austin Blvd., Austin, Texas. Defendant H-E-B also controls and operates other H-E-B stores, including in Lakeway, Texas.

227. At all times relevant herein, Plaintiff was an invitee of Defendant H-E-B.

228. Defendant H-E-B had a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm on the premises about which Defendant H-E-B knew or should have known.

229. Defendant H-E-B knew that Plaintiff faced an unreasonable and foreseeable risk of harm on Defendant's premises. For example:

- Defendant H-E-B knew that DAP assaulted another victim in a similar manner at a nearby H-E-B store in Lakeway, Texas just one night before DAP's assault on Plaintiff.
- Defendant H-E-B knew from immediately preceding conduct and circumstance during the September 28, 2024, confrontation that criminal acts were about to occur.
- Defendant H-E-B knew or had reason to know that criminal violence was imminent when the Individual DAP Defendants loudly confronted Plaintiff, followed him around the store for several minutes, cornered him, shoved him, yelled disparaging accusations at him, and tried to instigate violence by yelling, for example, "hit me, hit me, pussy."
- Defendant H-E-B knew or had reason to know that further criminal violence was imminent after Defendant Carnicom punched Schellhase in the face during the confrontation, and the confrontation continued.
- Defendant H-E-B knew or had reason to know that further criminal violence was imminent after Defendant Campbell smacked Schellhase in the face during the confrontation, and the confrontation continued.
- Defendant H-E-B knew or had reason to know that further criminal violence was imminent after Defendant Johnson shoved Schellhase into a crate of produce during the confrontation and which culminated in Defendant

Campbell knocking Plaintiff unconscious by smashing the back of Plaintiff's head with a pumpkin.

- The above-described violent acts occurred over several minutes throughout various parts of the store, including on both the first and second levels of the building.
- Defendant H-E-B knew or had reason to know that criminal violence was imminent because at least one H-E-B employee was in the immediate vicinity of and witnessed the confrontation, including the various assaults upon Plaintiff.
- Defendant H-E-B knew or had reason to know that criminal violence was imminent because the Individual DAP Defendants' loud and aggressive confrontation drew a crowd of witnesses who followed, observed, and filmed the encounter.

230. With knowledge of imminent violence upon Plaintiff, Defendant H-E-B owed Plaintiff a duty to intervene and defuse the confrontation.

231. H-E-B breached the duty that it owed to Plaintiff because H-E-B took no action to prevent the assaults upon Plaintiff.

- In fact, a security employee of Defendant H-E-B was present for the entire confrontation, and upon information and belief, heard the entire confrontation and observed most or all of it. Despite his knowledge of the ongoing assault and the foreseeability that additional assaults were imminent, the H-E-B security employee made no effort to prevent the violence against Schellhase, call the police, or otherwise intervene.

- Moreover, Plaintiff pleaded with the security employee for assistance after being assaulted multiple times. Instead of intervening, the security employee backed away, which empowered Defendant Campbell to, immediately thereafter, smash Plaintiff's head with the pumpkin.
- Even after Plaintiff regained consciousness, neither the security employee nor any other employee of Defendant H-E-B offered to assist Schellhase, demonstrating Defendant H-E-B's complete disregard for the duty that it owed to Plaintiff.

232. Defendant H-E-B's breach is an actual and proximate cause of Plaintiff's injuries because Defendant H-E-B's refusal to intervene is a substantial factor contributing to Plaintiff's injuries, which foreseeably resulted from Defendant H-E-B's breach.

233. Defendant H-E-B's breach of the duty it owed to Plaintiff amounts to gross negligence because Defendant H-E-B's subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of Plaintiff.

234. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including past and future medical expenses, lost earnings, lost earning capacity, loss of reputation, lost business relationships, physical impairment, physical pain and suffering, mental anguish, property damage, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of Defendant's gross negligence.

**COUNT XII – NEGLIGENT UNDERTAKING**
**(Against Defendant H-E-B)**

235. Plaintiff incorporates by reference the allegations made in the paragraphs above as if fully rewritten.

236. Defendant H-E-B undertook the responsibility of providing services necessary for the protection of its customers, including Plaintiff.

237. Upon information and belief, Defendant H-E-B hired employees whose responsibilities included providing safety services to customers.

238. Defendant H-E-B failed to exercise reasonable care in training and supervising safety services employees.

239. Plaintiff knew of these safety services because he observed Defendant H-E-B's security employee—wearing a name placard and a badge and sitting near a doorway—both as Plaintiff first entered the store and throughout the DAP confrontation.

240. Defendant H-E-B failed to exercise reasonable care, which increased the risk of harm to Plaintiff.

241. Plaintiff relied upon Defendant H-E-B's negligent rendering of its safety services to his detriment.

242. In fact, Plaintiff relied upon Defendant H-E-B's safety services by requesting assistance multiple times from Defendant H-E-B's security employee, who refused to assist. And after the Defendant H-E-B's security employee refused to assist, Plaintiff was assaulted.

243. Defendant H-E-B's negligent undertaking is an actual and proximate cause of Plaintiff's injuries because Defendant H-E-B's refusal to intervene was a substantial factor contributing to Plaintiff's injuries, which foreseeably resulted from Defendant H-E-B's breach.

244. As a direct and proximate result of Defendant's negligent undertaking, Plaintiff has suffered and continues to suffer injuries and compensatory damages, including past and future medical expenses, lost earnings, lost earning capacity, loss of reputation, lost business relationships, physical impairment, physical pain and suffering, mental anguish, property damage, and other damages recoverable under Texas law. Plaintiff also seeks exemplary damages because of Defendant's gross negligence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands, on all counts, judgment and relief against Defendants as follows:

A. Compensatory damages in an amount not less than $75,000 for economic, emotional, reputational and other harm;

B. Treble damages;

C. Restitution and disgorgement;

D. Pre- and post-judgment interest;

E. Exemplary damages, including damages exceeding the Texas state statutory maximum pursuant to sections 41.008(c)(7), and (13) of the Civil Practice and Remedies Code, and other applicable exceptions to statutory maximums for the offenses by certain Defendants;

F. A permanent injunction against the Defendants' continued misappropriation of Plaintiff's name and image;

G. For costs of this suit; and

H. For such other relief as may be available at law or in equity, including, without limitation, reimbursement of all costs and expenses incurred by Plaintiff in connection with this action, including, without limitation, reasonable attorneys' fees.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiff requests a jury trial on all issues and questions raised in this complaint by the maximum number of jurors permitted by law.

Date: September 27, 2026

Respectfully submitted,

**Flannery | Georgalis, LLC**

By: */s/ Christopher J. Joyce*
Paul M. Flannery (OH 0091480)
Christopher J. Joyce (OH 0086576)
Caryn L. Peterson (OH 0082940)
1621 Euclid Avenue, Floor 16
Cleveland, Ohio 44115
P: (216) 466-0162
F: (614) 526-0601
pflannery@flannerygeorgalis.com
cjoyce@flannerygeorgalis.com
cpeterson@flannerygeorgalis.com

Dominick A. Kocak (OH 0102165)
Flannery Georgalis, LLC
175 S. Third Street, Suite 285
Columbus, Ohio 43215
(614) 324-6351
dkocak@flannerygeorgalis.com

***PRO HAC VICE* APPLICATIONS FORTHCOMING**

**MACVANE LLP**

By: */s/ John MacVane*
John MacVane
Texas State Bar No. 24085444
The Esperson Building
808 Travis, Suite 100
Houston, Texas 77002
Telephone: (713) 489-2935
John.MacVane@MacVaneLLP.com

***Counsel for Plaintiff***